MARY EDNA LISTER *vs.* WILLIAM HARVEY LISTER.

JUNE 25, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

94

FLYNN, C. J. This petition was brought by a wife to obtain a divorce from bed, board and future cohabitation on the single ground of the husband's alleged extreme cruelty. After a hearing before a justice of the superior court the petition, which also prayed for custody of the minor child of said parties and allowances for support, was denied and dismissed. From that decision the petitioner has prosecuted her bill of exceptions to this court.

The petitioner Mary Edna Lister is forty-seven years of age, had been married previously, and had a child of that marriage. The respondent William Harvey Lister also had been married previously and had a child of such marriage. The parties were married to each other on September 23, 1933 and one child, Richard F. Lister, was born of this marriage.

In general the petitioner's basic complaints are that on four different occasions respondent had committed acts of physical violence; that he had a habit of using profanity and calling her vile names, especially when he was drinking to excess; and that upon innumerable occasions there were arguments and quarrels caused by his conduct and language without provocation on her part.

She testified that the first incident involving physical cruelty happened in 1934 when respondent threw her against the tile in the kitchen, thereby cutting her forehead and leaving a mark. She admitted this did not require any medical attention and did not cause her to separate from her husband. The respondent had no recollection of the particular occurrence but denied specifically that petitioner had been cut or marked as she testified.

The second event happened during a trip to Florida in 1948. The petitioner claims that at the dinner table in the presence of two invited couples "suddenly he [respondent] spit a whole glass of water in my face." The respondent admitted there was such an occurrence but explained that petitioner had provoked him by her quarrelsome words and he merely "spouted a little cold water on her to cool her off." The petitioner did not claim that she was injured thereby and it did not cause her to seek medical attention or to leave respondent.

The third incident happened in 1949 while the parties and petitioner's mother were on vacation at Block Island. The petitioner testified that she was forced to remain in her bedroom most of the time because of respondent's vile language to her in public, and that he also threatened to throw her out the window. This testimony was flatly denied by respondent and it was not corroborated by petitioner's mother. According to respondent, the parties had been confined to their room with illness a good part of the time and had indulged in considerable drinking before they left Block Island on the boat. The petitioner, however, denied participating in such drinking. At any rate no physical injury or need for medical attendance resulted from this incident and no separation took place because of it.

The fourth event relied on happened during the following year 1950 in East Providence. According to petitioner the respondent came home about two o'clock in the morning and because of his intoxicated condition was unable to unlock the door with his key. By ringing the bell continuously he awoke petitioner, who opened the door. When she questioned him as to where he had been a quarrel commenced. She testified that as she walked up the stairs ahead of him he hit her with his fist on the side and legs causing bruises, and that in the bedroom to tried to choke her, leaving a red mark on her neck and making her throat so sore that she could not eat for several days. The marks

on her body and neck were not corroborated by petitioner's mother but were corroborated to an extent by Vivian S. McNeil, a friend of the parties, who testified she later saw certain marks, although her testimony was somewhat vague and related to a different date.

At any rate respondent admitted an incident of that kind but claimed that petitioner, while facing him as she walked backwards up the stairs, continued to hit him over the head; that "to scare her" he placed his hands on her neck without any intention of injuring her; that he did not beat her; and that she had no marks on her side and legs. The petitioner on cross-examination admitted hitting respondent, as he testified, but explained that she struck him back for every time he hit her. Apparently as a result of that disturbance the police were called by or on behalf of petitioner, and in August 1950 she again sued for a divorce. However, the parties later became reconciled around Christmas of that year.

They continued to live together thereafter until September 1951, when *respondent* left the house because of his dissatisfaction with petitioner's conduct in going to Newport for a week without him and without telling him where she was. He also testified that on her return she was under the influence of liquor and that she claimed to have driven an automobile from Newport. The petitioner denied she was in such a condition and explained that she had previously talked over the trip with respondent; that he had been invited to go with her; and that she telephoned to his office but could not reach him. Following that incident the instant petition was brought on June 11, 1952.

In addition to the above evidence, petitioner testified as to several separations and petitions which were discontinued before the reconciliation in 1950 and she complained generally of respondent's abusive language, frequent quarrels, and of his expressed preference for the companionship of his secretary. The habit of profanity was admitted

by respondent, but he claimed petitioner had known of this long before they were married. Her evidence was corroborated by petitioner's mother and another witness but nowhere does the precise nature of the profanity appear. Nor is it shown wherein it amounted to a course of conduct which contributed to any physical or mental injury, or that it required a doctor's attention to petitioner, who admittedly had been under medical treatment for five years for a condition of health not attributable to respondent's alleged cruelty. All the witnesses admit that respondent was a good provider notwithstanding his habits of profanity and perhaps excessive drinking at times.

The trial justice in a decision from the bench concluded in substance that the incidents of the alleged physical cruelty were widely separated, were somewhat exaggerated and not corroborated in all material respects, and did not result in any physical or mental injury. He pointed out that the absence of any necessity for treatment and of medical testimony in that regard tended to confirm his conclusion on the evidence.

He also indicated that the quarrels and arguments seemed to be traceable to a pattern of living established by both parties, or at least that they did not happen without participation and some provocation by petitioner. Consequently he determined that she had failed to satisfy him upon the evidence that respondent's actions had amounted legally to extreme cruelty, either physical or mental, and that she was without fault. He further found that if the evidence could be considered as sufficient in those respects, such conduct by respondent was condoned in 1950 by petitioner's resumption of marital relations; and that the evidence of his conduct since that time did not justify the setting aside of the condonation.

In petitioner's exception numbered 5 she includes generally several exceptions to rulings on evidence merely by page number. But these exceptions are not set forth sepa-

rately as required and therefore need not be considered. *Labonte* v. *Alvernaz*, 47 R. I. 226; *Gill* v. *Laquerre*, 51 R. I. 158. Further, these exceptions are not argued as such in the brief. The petitioner otherwise contends that the decision is erroneous in that it is against the evidence and the weight thereof, and also is against the law, and that she did not receive a fair and impartial trial.

As to the first of these contentions, we have examined the transcript and it appears therefrom that the evidence was lacking in corroboration of certain essential details and is not always clear as to others, such as in particularizing the nature of respondent's profanity and in connecting his alleged course of misconduct with either physical or mental injury to petitioner. Generally speaking the admitted habits of profanity and drinking to excess certainly do not constitute proper conduct. However, the evidence as a whole was conflicting in several material aspects and is open to different conclusions, especially as to whether petitioner had participated in or had provoked some of respondent's acts of cruelty. In the circumstances the question before this court is whether the evidence is so clear and corroborated that we can conclude from the record alone that a decision was required in favor of petitioner on all material issues and that therefore the trial justice was clearly wrong. While a decision in petitioner's favor if it were so rendered might be supported, we cannot say that the evidence was so clear and preponderant as to require a reversal of the trial justice's decision.

The petitioner further contends that the decree is contrary to the law. If the transcript and decision are read together, we think that they indicate throughout the trial justice's awareness of the cases now cited by petitioner and others touching the law as to the ground of extreme cruelty and the necessity for a petitioner to establish her freedom from fault. See *Egidi* v. *Egidi*, 37 R. I. 481; *Grant* v. *Grant*, 44 R. I. 169; *Grimes* v. *Grimes*, 61 R. I. 198.

Finally in contending that she did not receive a fair and impartial trial, petitioner points out the nature of some observations by the trial justice during the trial, including his language in ruling on certain questions and the manner in which he interrogated the respondent. While he might have been more objective and cautious in one or two of such questions or observations, the record as a whole does not show a bias or prejudice against petitioner as she contends. Nor does it show that she did not have a fair trial. Some of the language complained of was used by the trial justice to point out to petitioner's attorney, who offered evidence of other grounds, that the only allegation was extreme cruelty and that testimony of other possible grounds was not relevant to the issue involved.

The petitioner's exception is overruled, and the case is remitted to the superior court for further proceedings.

*Grim & Littlefield, Benjamin W. Grim,* for petitioner.

*Joseph Mainelli,* for respondent.